IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MELVIN DUPREE CULVER, <br> AIS # 246982, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) <br> ) | CASE NO. 1:08cv556-TMH-CSC <br> (WO) |
| OFFICER CARLISLE, *et al.*, | ) <br> ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Melvin Dupree Culver ("Culver"), a state inmate, contends that the defendants violated his constitutional rights when he received a sanction for disobeying an order and was placed in administrative segregation. Culver names Houston County Corrections Officers Spencer Downs, Lorinda Carlisle, Carl Kirksey, Kim Turner, Jackie Mitchell and Commander of Jail Operations Keith W. Reed as defendants. Culver seeks monetary damages for the alleged violation of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing Culver's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment. (Doc. No. 48.) Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and Culver's responses in opposition to the motion, the court concludes that the defendants' motion for summary

judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curium) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Culver is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier

3

of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

4

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving

party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Culver fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

### A. Synopsis of Facts

Culver did not believe his living arrangements were ideal during his incarceration in the Houston County Jail. On the morning of June 10, 2008, Culver submitted the following grievance to jail officials:

> This is the 2nd time around of the guy "Ideal Rhodes" sleep in the same cell that I do - <u>insult me</u> in a matter of disrespect. I reported the behavior the first time to the on duty jail supervisor C/O Foster. So did I this morning of 6/10/08. The truth of the matter is I read and write after 9:00 p.m. roll in time or me and another cellmate talk and he complains that that bothers him.
>
> . . . I have no problem with the unit I am in . . . Moving me into another cell will get me out of this guy's way. Because I would thank [*sic*] that the complaints or just excuses for a reason to get rumbled on in the future, yea dig, or either move him it don't matter.

(Attach. to Reed's Affid, Defs' Ex. H, Doc. No. 48-9, p. 21 of 40.)

During a shift change later that day, Officer Downs ordered all inmates to "roll in" (*i.e.*,

return to their cells) for the purpose of conducting a headcount. (Defs' Ex. I, Doc, No. 48-2, Downs' Affid., p. 2.) Culver remained outside of his cell and told Officer Downs that he needed to speak with the sergeant on duty. (*Id*.) Both Officer Downs and Officer Carlisle ordered Culver to return to his cell. (*Id*.) Culver, however, refused to do so. (*Id*.) Officer Downs advised Culver that he could return to his cell or be placed in administrative segregation. (*Id*.) Culver chose segregation. (*Id*.)

Later that day, Culver was issued a sanction of 21 days of lockdown for disobeying an order or instructions given by Sheriff's Department personnel, a violation of Jail Rule #10. (Doc. NO. 48-9, Defs' Ex. H.) The following day, Culver appealed the sanction, arguing that "[he] had filed a grievance and went to the emergency button because of an emergency . . . [but that he] did not press the button . . . because the officer was approaching. The officer then said roll in & I asked if I could go to lockup instead until the Sgt. respond and reply to my roommate so that the matter would be in better hands. Because I was disrespected by the cell mate. Because first of all he had no reason behaving like he was going to assault me. . . ." (*Id*., pp. 19-20 of 40.)

On June 16, 2008, after receiving notice of the denial of the appeal of his disciplinary sanction, Culver submitted an inmate grievance form, in which he complained that he had attempted to resolve the problem prior to "roll-in" by submitting a grievance requesting to be moved away from his cell mate and that he believed his constitutional rights were being violated. (*Id*, p. 22 of 40.)

On June16, 2008, Culver also submitted an inmate request form to the sergeant on

duty, in which he complained that he was "trying to follow the rules [and had] filed a grievance ask[ing] to be removed from around the guy," that he was "in lock up on a humbug," and that he believed his constitutional rights were being violated. (*Id*., p. 24 of 40.) On June 23, 2008, Sergeant Turner responded to Culver's request by stating that he should follow the rules. (*Id*.) Culver was released from administrative segregation on June 30, 2008. (*Id*., p. 19 of 40.)

Upon receiving a response from Sergeant Turner on July 2, 2008, indicating that his June 16, 2008, grievance was denied, Culver immediately submitted an appeal of the denial of his grievance. (*Id*., p. 23 of 40.) Culver's appeal was also denied.[2] (*Id*.) On November 13, 2008, Culver was transferred from the Houston County Jail to an Alabama Department of Corrections Facility. (Reed's Affid., p. 2.)

### B. Due Process

To the extent Culver complains that the defendants denied him due process by issuing him a sanction and placing him in administrative segregation for 21 days, he is entitled to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S.

---

[2] In their special report, the defendants assert that Culver failed to exhaust his administrative remedies. In Commander Reed's affidavit, however, the Commander indicates that the plaintiff filed three grievances that appear to relate in part to the subject matter making the basis of the complaint in this case. (Reed's Affid., p. 2.) In addition, the defendants' own evidentiary materials indicate that Culver properly submitted a grievance and an appeal of its denial in compliance with the Houston County Jail grievance procedure. (Attach. to Reed's Affid., Defs' Ex. H, Doc. No. 48-9, pp. 22-24 of 40.)

8

472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). "In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486, 115 S.Ct. at 2305 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in Houston County Jail has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive jail environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *See Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the

9

sentence imposed by a court of law."). Thus, the deprivations imposed upon Culver based on the challenged sanction did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. This court must therefore determine whether the actions about which Culver complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223 (2005).

Applying the *Sandin* inquiry, the court concludes that limited time in administrative segregation and the temporary loss of privileges "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, to the extent Culver asserts that he was denied due process by being sanctioned for refusing to obey an order, the defendants are entitled to summary judgment.

### C.  Cruel and Unusual Punishment

To the extent Culver maintains the actions taken against him based on his sanction for refusing to obey an order constituted cruel and unusual punishment in violation of the Eighth Amendment, his claim is likewise without merit.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). None of the deprivations resulting from the sanction for disobeying an order establish a sufficiently grave deprivation denying minimal civilized measures of life's necessities so as to rise to the level of cruel and unusual punishment. Summary judgment is therefore due to be granted in favor of the defendants with respect to the alleged imposition of unconstitutional punishment.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 5, 2010 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 22nd day of January, 2010.

                                            /s/Charles S. Coody
                                            CHARLES S. COODY
                                            UNITED STATES MAGISTRATE JUDGE